FRANK WANEK v. CITY OF WINONA.

November 17, 1899.

Nos. 11,807—(162).

**Personal Injury—Physical Examination of Plaintiff.**

In a civil action for personal injuries, in which the plaintiff tenders an issue as to his physical condition, the trial court has the power, in a proper case, upon proper safeguards to protect the rights of both parties, to order the plaintiff to submit to a physical examination of his person in order to ascertain the nature and extent of his injuries, and, if he refuses to do so, his action should be dismissed. Facts considered, and *held*, that the court erred in denying defendant's application for an order requiring plaintiff to submit to a physical examination of his person.

Action in the district court for Winona county to recover $10,050 for personal injuries. The case was tried before Snow, J., and a jury, which rendered a verdict in favor of plaintiff for $4,000. The court made an order granting a motion for a new trial, unless plaintiff should consent to a reduction of the verdict to $3,000 and otherwise denying the motion. Plaintiff consented to the reduction, and from the order defendant appealed. Reversed.

*W. A. Finkelnburg* and *O. B. Gould,* for appellant.  ·

The overwhelming weight of authority sustains the power of the court, as a matter of right, to order an examination. Hatfield v. St. Paul & D. R. Co., 33 Minn. 130; Schroeder v. Chicago, 47 Iowa, 375; White v. Milwaukee, 61 Wis. 536; Sibley v. Smith, 46 Ark. 275; Miami v. Baily, 37 Oh. St. 104; Alabama v. Hill, 90 Ala. 71; Graves v. City, 95 Mich. 266; Atchison v. Thul, 29 Kan. 466; Richmond v. Childress, 82 Ga. 719; Sioux City v. Finlayson, 16 Neb. 578; Fullerton v. Fordyce, 121 Mo. 1; Houston v. Berling, 14 Tex. Civ. App. 544; Belt v. Allen (Ky.) 44 S. W. 89; St. Louis v. Dobbins, 60 Ark. 481; 1 Thompson, Trials, § 859; 2 Jones, Ev. §§ 398, 399.

*H. M. Lamberton* and *Brown & Abbott,* for respondent.

The court had power in its discretion to deny the application for an examination. Hatfield v. St. Paul & D. R. Co., 33 Minn. 130. It is true that where the court has discretion, but refuses to exercise it on the ground that such discretion does not exist, error is committed. But the reason for the rule is that if the discretion had been exercised, it might have been in favor of the complaining party. Leonard v. Green, 30 Minn. 496; Seibert v. Minneapolis & St. L. Ry. Co., 58 Minn. 58. In this case the denial was on the merits. The court has, however, no power to grant such examination. Union Pacific Ry. Co. v. Botsford, 141 U. S. 250; Illinois Cent. R. Co. v. Griffin, 80 Fed. 278; Roberts v. Ogdensburgh, 29 Hun, 154; McQuigan v. Delaware, 129 N. Y. 50; Pennsylvania v. Newmeyer, 129 Ind. 401; Parker v. Enslow, 102 Ill. 272; Peoria v. Rice, 144 Ill. 227; Cole v. Fall Brook, 159 N. Y. 59.

MITCHELL, J.

This action was brought to recover damages for personal injuries caused by the alleged negligence of the city in allowing a public sidewalk to become and remain out of repair, and in an unsafe condition for public travel.

The only question which we find it necessary to consider is whether the trial court erred in denying the application of the defendant to require the plaintiff to submit himself to a physical examination by two or more competent and disinterested physicians, to be named by the court, in order to ascertain the nature and extent of his injuries. The alleged injuries were sustained October 19, 1898. The plaintiff's notice of his claim for damages was served on the city November 14, 1898. This action was commenced December 9 of the same year, and defendant's application for a physical examination was made May 1, 1899, the first day of the term at which the action was tried. The complaint alleged that the injuries would be permanent, and the existence or nonexistence of at least some of the injuries could only be ascertained by a physical examination of plaintiff's person. The trial court denied the application upon the grounds, as shown by his memorandum: First, that he had no power in any case to order a party to submit to a physical ex-

amination of his person; and, second, even if he had the power, he would, in the exercise of his discretion, have refused, under the circumstances of the case, to grant defendant's application.

1. We are very clearly of the opinion that the court has the power, in a case of this kind, to order the plaintiff to submit to a physical examination of his person. We shall not go into any extended discussion of a question which has been so much and so often discussed by courts and text writers. Upon both principle and reason we are of opinion that in a civil action for physical injuries, where the plaintiff tenders an issue as to his physical condition, and appeals to the courts of justice for redress, it is within the power of the trial court, in the exercise of a sound discretion, in proper cases, upon an application reasonably made, under proper safeguards designed to preserve the rights of both parties, to order such an inspection, and to require the plaintiff to submit to it under the penalty of having his action dismissed in case he refuses to do so.

We are aware that there are some eminent authorities to the contrary, but, with all due deference to them, we cannot avoid thinking that they base their conclusion upon a fallacious and somewhat sentimental line of argument as to the inviolability and sacredness of a man's own person, and his right to its possession and control free from all restraint or interference of others. This, rightly understood, is all true, but his right to the possession and control of his person is no more sacred than the cause of justice. When a person appeals to the state for justice, tendering an issue as to his own physical condition, he impliedly consents in advance to the doing justice to the other party, and to make any disclosure which is necessary to be made in order that justice may be done. No one claims that he can be compelled to submit to such an examination. But he must either submit to it, or have his action dismissed.

Any other rule in these personal injury cases would often result in an entire denial of justice to the defendant, and leave him wholly at the mercy of the plaintiff's witnesses. In very many cases the actual nature and extent of the injuries can only be ascertained by a physical examination of the person of the injured party. Such

actions were formerly very infrequent, but of late years they consti-
tute one of the largest branches of legal industry, and are not in-
frequently attempted to be sustained by malingering on the part
of the plaintiff, false testimony, or the very unreliable speculations
of so-called "medical experts." To allow the plaintiff in such cases,
if he sees fit to display his injuries to the jury, to call in as many
friendly physicians as he pleases, and have them examine his per-
son, and then produce them as expert witnesses on the trial, but at
the same time deny to the defendant the right in any case to have
a physical examination of plaintiff's person, and leave him wholly
at the mercy of such witnesses as the plaintiff sees fit to call, consti-
tutes a denial of justice too gross, in our judgment, to be tolerated
for one moment.

2. The next question is whether there was an abuse of discretion
in denying plaintiff's request. The opinion of the learned court that
he would have denied it even if he had the power to grant it may
quite naturally have been somewhat influenced by the fact that he
was apparently very decided in his own view that the law was and
ought to be that courts have no such power. The only reason sug-
gested in his memorandum why he would have denied the applica-
tion in the exercise of his discretion is that the defendant had al-
ready had an opportunity for the examination of the person of the
plaintiff. The facts, as disclosed by the affidavits interposed by the
plaintiff in opposition to the application, were substantially as fol-
lows:

A day or two after the accident, the plaintiff's wife, at her hus-
band's request, called on one of the city aldermen, and requested
him to send the city physician to see and treat the plaintiff at the
city's expense. The alderman having ascertained that the city
physician was absent from the city, requested Dr. Keyes to do so in
his place. Dr. Keyes did so, and attended and treated the plaintiff
for some time, and during such treatment examined his person two
or three times. The last of these examinations was on October 31,
which was before this action was commenced, and before plaintiff
had even served on the city notice of his claim for damages, and
consequently before the city officials knew, or had the means of
knowing, what injuries he would claim to have received. Plaintiff,

having become dissatisfied with Dr. Keyes' treatment, discharged him, and employed another physician, since deceased. Subsequently—the exact date does not appear, but presumably after plaintiff had served notice of his claim against the city—the city attorney, accompanied by Dr. Keyes, came to plaintiff's house, and demanded that he submit to another examination, which he declined to do.

The above is the only opportunity the defendant has ever had of examining the plaintiff's person. The injuries alleged in the complaint are numerous, severe, and permanent, consisting of injuries to his leg, back, right side, right groin, testicles, bladder, and nervous system. Assuming that the examinations by Dr. Keyes in the course of his treatment of the plaintiff are to be considered as made at the request and in behalf of the city, still, being made before it knew what injuries he would claim in his complaint, they could not have been specifically directed to ascertaining whether those particular injuries had or had not been sustained. Again, in any view of the case, the developments during the intervening six months would be most valuable, if not essential, in ascertaining the severity of the injuries, and whether they were permanent. For these reasons, we are of opinion that the trial court erred in not granting defendant's application.

We discover no other error in the record, but for this one the order appealed from must be reversed, and a new trial granted. It is so ordered.