## MARY MADSON v. WILLIAM L. CHRISTENSON and Others.[1]

December 18, 1914.

Nos. 18,921—(120).

**Will — testimony of others than subscribing witness.**

1. Where a will is contested, neither party is limited to the testimony of the subscribing witnesses, and either party may present other evidence to overcome the adverse testimony of such witnesses. The questions in controversy are to be determined from all the evidence bearing thereon, and not from the testimony of the subscribing witnesses only.

**Testimony of subscribing witness.**

2. The statute requires that all subscribing witnesses, "who are within the state and are competent and able to testify, shall be produced and examined." Where the proponent called a subscribing witness and examined him as to the manner in which the will was executed, the failure to examine him as to the sanity of the testator will not defeat the will, if such sanity be proven by other evidence. By calling him as a witness his testimony was made available, and, if contestants desired his testimony upon matters omitted by proponent, it was incumbent upon them to examine him in respect thereto.

1 Reported in 150 N. W. 213.

128 M.—2.

**Harmless error.**

    3. It was error to permit a legatee under the will to testify to statements made by the testator at the time he executed the will, but the validity of the will was conclusively established outside such testimony and the error was without prejudice.

Mary Madson petitioned the probate court for Hennepin county for the allowance of the last will and testament of James P. Christenson, deceased. William L. Christenson, Anna Mogenson and Howard P. Christenson, a minor, filed objections to the allowance of the will. From the order of the probate court admitting the will to probate, the contestants appealed to the district court for that county. The appeal was tried before Jelley, J., and a jury which answered in the affirmative the questions whether the alleged will was signed and attested in accordance with the statutes of Minnesota, and whether James P. Christenson, at the time he signed the alleged will, was mentally capable of making a will; and answered in the negative the question whether the execution of the alleged will was procured by the undue influence of Mary Madson, exercised by her over the said James P. Christenson. From an order denying contestants' motion for a new trial, they appealed. Affirmed.

*Jay W. Crane,* for appellants.

*Grotte & Bowen,* for respondent.

TAYLOR, C.

This is a contest over the will of James P. Christenson, deceased. The probate court allowed the will and admitted it to probate. The contestants appealed to the district court. Issues were framed and submitted to a jury. The jury found that the will was duly executed; that the testator was competent to execute it; and that it was executed free from any undue influence. Contestants made a motion for a new trial, and appealed to this court from the order denying such motion.

The instrument purports, upon its face, to have been properly executed as the last will and testament of James P. Christenson. It bears his signature at the end thereof. The usual attestation clause

is attached, and is signed by Anthony T. Grotte and Frederick J. Miller as attesting witnesses. At the trial both these witnesses were produced. Mr. Grotte, the attorney who drew the will, testified to the effect that it was executed and attested, in all respects, as required by statute.

Mr. Miller testified that he signed the will as a witness at the request of Grotte and in the presence of Christenson, Grotte and Mrs. Madson, but that it was not signed by Christenson, nor formally acknowledged by him as his will, while he, Miller, was present.

Contestants insist that a contested will cannot be admitted to probate, if either subscribing witness testifies that the will was neither signed by the testator, nor formally acknowledged by him, in the presence of such witness. This contention cannot be sustained upon either principle or authority. Although the law requires that, in case of a contest, all available attesting witnesses shall be produced and examined, it does not clothe any witness with the absolute power to defeat the will by testifying that some prescribed formality was omitted. As said by the Michigan court in Abbott v. Abbott, 41 Mich. 540, 2 N. W. 810:

"We know of no rule of law which makes the probate of a will depend upon the recollection, or even the veracity of a subscribing witness. The law, for wise and obvious reasons, requires such instruments to be executed and attested with such precautions as will usually guard against fraud. But if the forgetfulness or falsehood of a subscribing witness can invalidate a will, it would be easy in many cases to use such artifices or corruption as would render the best will nugatory. Their evidence is not conclusive either way, nor does the law presume that they are either more or less truthful than others."

The question to be determined is whether the will was in fact executed in the manner prescribed by statute. This is a question of fact, and must be determined from all the evidence in the case, not from the testimony of the subscribing witnesses only. If the evidence, taken as a whole, establishes, satisfactorily, that the will was properly executed, its validity should be upheld, even against the testimony of one, or both, of the subscribing witnesses. Matter of

Will of Cottrell, 95 N. Y. 329; In re Jones Will, 85 N. Y. Supp. 294; Hopf v. State, 72 Tex. 281, 10 S. W. 589; Will of Susan Jenkins, 43 Wis. 610; Gillis v. Gillis, 96 Ga. 1, 23 S. E. 107, 30 L.R.A. 143, 51 Am. St. 121; Beggan's Case, 68 N. J. Eq. 572, 59 Atl. 874; McCurdy v. Neall, 42 N. J. Eq. 333, 7 Atl. 566; Mead v. Trustees of Presbyterian Church, 229 Ill. 526, 83 N. E. 371, 14 L.R.A.(N.S.) 255, 11 Ann. Cas. 426; Barnewall v. Murrell, 108 Ala. 366, 18 South. 831; In re Shapter's Estate, 35 Colo. 578, 85 Pac. 688, 6 L.R.A(N.S.) 575, and note, 117 Am. St. 216; Bell v. Clark, 31 N. C. 239.

2. The evidence is ample to show that Mr. Christenson was competent to make a will at the time the instrument in controversy was executed, and there is no evidence to the contrary. Mr. Miller was not interrogated upon this point, however, and contestants insist that the will cannot be established without his testimony upon that question. We cannot assent to this proposition. Contestants rely upon the statute which provides that all attesting witnesses, "who are within the state, and are competent and able to testify, shall be produced and examined." We cannot hold that the legislature intended, by this statute, to defeat a will, whenever the proponent should neglect to interrogate a subscribing witness as to some of the facts necessary to establish its validity. Such a rule would operate to place a premium upon technicalities. The attesting witnesses are not necessarily the witnesses of the proponent in the sense in which that expression is usually understood. They are witnesses provided for by law, and the court is entitled to such information as they can impart. The proponent is required to call them, although he may know that they will testify against him. The statute requires that they shall be produced and examined, but does not prescribe the nature or extent of such examination, nor that they shall be interrogated by the proponent as to all matters bearing upon the validity of the will. When they are called to the stand as witnesses, their testimony is thereby made available. The examination conducted by the proponent may be supplemented by such further examination, by others, as may be necessary to elicit all the facts

within their knowledge. Where such a witness is called and examined by the proponent and, upon such examination, discloses that he is a subscribing witness, and testifies as to the manner in which the will was executed, the failure of the proponent to examine him as to the sanity of the testator will not bar the will from admission to probate, if there be sufficient other evidence to show that the testator was, in fact, competent to execute. If contestants desire his testimony as to matters concerning which the proponent has not examined him, they should inquire as to such matters themselves. If they omit to do so, the failure of the witness to testify in respect to such matters cannot be permitted to defeat the will. His failure to testify as to the testamentary capacity of the testator, ought not to bar the probate of the will, if his positive testimony that the testator did not possess such capacity would not have that effect; and the authorities hold that the validity of the will may be established notwithstanding such positive testimony. Masonic Orphans" Home v. Gracy, 190 Ill. 95, 60 N. E. 194; Martin v. Perkins, 56 Miss. 204; Perkins v. Perkins, 39 N. H. 163; Will of Susan Jenkins, 43 Wis. 610; Wigmore, Evidence, §§ 1302, 2049; also the cases previously cited.

3. Mrs. Madson, the proponent of the will and one of the legatees thereunder, was present when it was executed, and was called as a witness. Her testimony that the will was signed by the testator in the presence of both attesting witnesses was unquestionably competent; but, as she would receive a direct pecuniary benefit from the establishment of the will and its admission to probate, she was disqualified by the statute from testifying as to "any conversation with, or admission of," the deceased. Section 8378, G. S. 1913. The statute disqualifies her from testifying as to "conversations with or admissions of" the deceased even if she took no part therein herself. Comstock v. Comstock, 76 Minn. 396, 79 N. W. 300.

After she had stated that those present at the execution of the will were Mr. Christenson, Mr. Grotte, Mr. Miller and herself, she was asked by Mr. Grotte, who was conducting the examination, to state "what conversation was had between all the parties concerned

there as far as you can remember." Thereupon counsel for contestants stated:

"I object to any conversation at this time; it appears this lady is interested in this matter and Mr. James Christenson is dead. I object to any conversation between this lady and Mr. Christenson and to what occurred."

The objection was overruled and an exception taken. The witness then inquired: "Well, at the time when the will was signed, do you mean?" to which Mr. Grotte responded, "during that time tell what occurred." Counsel for contestants then interposed: "Same objection—the party appears to be dead and this lady is an interested party." This objection was also overruled and an exception taken. The witness then answered:

"Well, Mr. Miller was called into your private office at that time and when he came in there you introduced him to Mr. Christenson and you then said that this man has just made his will and he wants us to act as witnesses, and you turned to Mr. Christenson and says 'Is this your last will and testament?' something to that effect, and he says 'Yes.' Well, then, you said to him, 'Do you want us to sign this as witnesses?' and he says 'Yes, that will be all right.' "

It is not contended that this testimony was admissible; but the effect of the statute is sought to be avoided on the ground that the objection was not sufficiently specific; that the question as finally submitted to the witness did not call for such statements; and that no motion was made to strike out the improper testimony. The original question called for the entire conversation between all the parties present at the execution of the will; the objection to it had been overruled; and it is apparent that neither the court, the parties, nor the witness, understood the response to the inquiry of the witness as indicating that she was not to give such conversation. She merely asked whether the question referred to the time when the will was signed, and was directed to tell what occurred during that time. The making of these statements was a part of what "occurred," according to the witness. The question was improper, because it called upon the witness to state the conversation of the

deceased, as well as the conversation of the others. The objection interposed was not carefully framed, and was not limited to the objectionable element in the question, but it pointed out clearly that it was based upon the fact that the testator was dead and that the witness was an interested party. The point in the objection was obvious, and must have been fully understood, and no one could have been misled. Under such circumstances, we are not willing to say that the objection can be disregarded because not specifically limited to the objectionable element in the question. To disregard it upon that ground would be to invoke a bare technicality to sustain the admission of evidence declared by the statute to be inadmissible. The rule that a motion must be made to strike out improper evidence, in order to raise the question of its admissibility on appeal, does not apply where proper objection to its introduction was made before it was received.

4. Mr. Christenson was a business man in the full possession of his faculties. It is undisputed that he employed Mr. Grotte to prepare his will; that, at the time in question, he went to Mr. Grotte's office for the purpose of executing it; that his signature thereto is genuine; that the attestation clause is in proper form and was signed in his presence by both Mr. Grotte and Mr. Miller as attesting witnesses; that he saw, heard and understood all that took place, and that he took possession of the will and carried it away with him. The objections to the probate of the will are purely technical. The only evidence, tending in anywise to impugn it, is the statement of the witness, Miller, that it was not signed by Mr. Christenson nor formally acknowledged by him while the witness was present. Miller's version of the transaction is: That, when he entered the room, the will was lying upon the desk with Christenson's name already written in the place for the signature; that Grotte introduced him to Christenson with the statement that Christenson had made his last will and wanted them to sign as witnesses; that Christenson expressed pleasure at meeting him, but gave no express assent to the statement made by Grotte; that thereupon, in the presence of Christenson, both he and Grotte signed the attestation clause as witnesses, and that Grotte then folded up the will,

placed it in an envelope and handed it to Christenson who took it and inquired as to Grotte's fees as the witness left the room. ·

It is held by several courts that a request to sign as witnesses, made by one intrusted with the preparation of a will, in the presence of the testator and under such circumstances as are above related, is to be taken as the request of the testator. Cheatham v. Hatcher, 30 Gratt. 56, 32 Am. Rep. 650, and cases cited therein. Will of John Meurer, 44 Wis. 392, 28 Am. Rep. 591; Bundy v. McKnight, 48 Ind. 502; Welch v. Adams, 63 N. H. 344, 1 Atl. 1, 56 Am. Rep. 521. In Harp v. Parr, 168 Ill. 459, 474, 48 N. E. 113, 117, it is said at the bottom of page 474 "the person who drew the will, and who superintended its execution, spoke of it as the testator's will in the testator's presence, and requested the witnesses in the testator's presence, to sign it as his will. The silence and presence of the testator gave consent to these declarations on the part of the person superintending the execution of the will, and amounted to an acknowledgment by the testator of the will as his act and deed."

Mr. Grotte and Mrs. Madson were present during the entire transaction, and both testify positively that the will was signed by Mr. Christenson after Miller came into the room and in his presence. Mrs. Madson's testimony was competent as to such fact. There is nothing to impeach the will except the statement of Miller as to the manner in which it was executed, and the court are of opinion that its validity was conclusively established, outside the testimony erroneously admitted, and that the case falls within the rule that a reversal will not be ordered for the erroneous admission of evidence, where it is clear that the result would have been the same had such evidence been rejected. Crowley v. Burns Boiler & Mnfg. Co. 100 Minn. 178, 110 N. W. 969; State v. Crawford, 96 Minn. 95, 104 N. W. 768, 822, 1 L.R.A.(N.S.) 839; Whitaker v. Chicago, St. P. M. & O. Ry. Co. 115 Minn. 140, 131 N. W. 1061; Bahr v. Northern Pac. Ry. Co. 101 Minn. 314, 112 N. W. 267; Aske v. Duluth & Iron Range R. Co. 83 Minn. 197, 85 N. W. 1011; 1 Wigmore, Evidence, § 21.

Order affirmed.