## LeROY WASMUND AND ANOTHER v. EARL NUNAMAKER AND ANOTHER.

151 N. W. (2d) 577.

June 6, 1967—No. 40,816.

*Winter, Lundquist & Sherwood* and *Marvin E. Lundquist,* for relators.

*Mott, Grose, Von Holtum & Hefferan* and *Clint Grose,* for respondents.

NELSON, JUSTICE.

This is an application to have a writ of prohibition issued out of this court made absolute.

The issue set forth in the petition for the writ is a narrow one. Respondent plaintiffs, LeRoy Wasmund and Mrs. Geneva Wasmund, have brought an action against defendant relators, Earl Nunamaker and Jeanne Nunamaker, alleging that Mrs. Wasmund sustained permanent brain damage and damage to the nervous system in an automobile col-

lision out of which the action arose. Pretrial procedures reveal that in connection therewith Mrs. Wasmund has been examined by doctors engaged in the specialty field of neurology and that at least one of the specialists will be present at the trial for the purpose of rendering medical testimony.

At the call of the district court calendar in Nobles County in February 1967, relators made a motion pursuant to Rule 35.01, Rules of Civil Procedure, seeking an order compelling an examination of Mrs. Wasmund by Dr. Andrew J. Leemhuis. This motion was opposed by counsel for plaintiffs. Relators based their motion upon the showing of the nature of the injury claims involved, the qualifications of the medical examiner requested, and their desire for his personal appearance at the trial. Plaintiffs made no objection to having an examination made of plaintiff Geneva Wasmund but did object to relators' choice of medical examiner, wholly upon the basis of a personal relationship claimed to exist between one of plaintiffs' counsel, Mr. Clint Grose, and Dr. Leemhuis which had developed as a result of a cross-examination of Dr. Leemhuis at another and previous trial where Dr. Leemhuis had testified at the request of a defendant and Mr. Grose had represented the plaintiff.

There is no claim on the part of plaintiffs that Dr. Leemhuis is not fully qualified to make the examination professionally nor any objection to the fact that an examination by Dr. Leemhuis would be made at his offices in Minneapolis. The objection is to the doctor's appearance to testify at the trial, not on account of any objections on the part of plaintiffs as litigants, but only on grounds of hostility personal to plaintiffs' counsel himself. The trial court, after hearing, denied defendants' motion to compel Mrs. Wasmund to submit to an examination by Dr. Leemhuis, holding that Rule 35.01, Rules of Civil Procedure, does not give defendants the right to select a doctor for the examination, especially when plaintiffs object to the selection. Defendants thereupon sought a writ of prohibition in this court to restrain the trial court from proceeding with trial of the action until reversal of its order denying their motion.

The issue thus is whether a personality conflict between plaintiffs'

counsel and Dr. Leemhuis (claimed by Mr. Grose and denied by Dr. Leemhuis) is sufficient to thwart the effect of Rule 35.01. We think it is clearly shown that good cause exists for the physical examination by reason of the physical condition of Mrs. Wasmund. The application for the examination was made by relators before commencement of trial, and plaintiffs made no objection to the time, place, and scope of the examination. Relators also showed in their application that Dr. Leemhuis was willing to travel to the place of trial in order to testify.

It is the claim of relators that plaintiffs' refusal to agree to the examination by Dr. Leemhuis in the instant case is unreasonable and is based on a whim, personal to counsel himself, and therefore is not grounds to prevent an examination of Geneva Wasmund by the doctor of relators' choice. To hold otherwise would, relators argue, result in a virtual elimination from future appearances in court of many qualified medical experts of proven ability, and this possibly because they are of exceptional ability in their field. This brings us to the question of whether the use of a writ of prohibition may in the discretion of this court be justified under the circumstances. We have concluded that it is a proper case for its use.

The essentials to the issuance of the writ are (1) that the court, officer, or person against whom the writ issues is about to exercise judicial or quasi-judicial power; (2) that the exercise of such power by such court, officer, or person is unauthorized by law; and (3) that it will result in injury for which there is no other adequate remedy at law.

The writ is an extraordinary writ issued for the purpose of preventing inferior courts or tribunals or other individuals vested by law with judicial or quasi-judicial authority from going beyond their jurisdiction. The general nature and office of the writ is to furnish a preventive rather than a corrective remedy. The writ is not one of right but of discretion and issues only in extreme cases where the law affords no other adequate remedy by motion, trial, appeal, certiorari, or otherwise. In the absence of another legal remedy which is reasonably efficient and adequate, it may properly be issued in the discretion of the court to prevent an inferior tribunal from proceeding in a matter over

which it is wholly without jurisdiction or to prevent it from exceeding its legitimate powers in a matter over which it has jurisdiction, and it may also issue to prevent an abuse of discretion where there is no other adequate remedy at law.[1]

We held in Thermorama, Inc. v. Shiller, 271 Minn. 79, 135 N. W. (2d) 43, that whether the supreme court of this state, before actual commencement of trial, should review a pretrial discovery order is dependent upon whether it appears that the court is about to exceed its jurisdiction or its action relates to a matter that is decisive of the case; where the court has ordered the production of information clearly not discoverable and there is no adequate remedy at law; or where, in rare instances, it will settle a rule of practice affecting all litigants. See, also, Jeppesen v. Swanson, 243 Minn. 547, 68 N. W. (2d) 649; Boldt v. Sanders, 261 Minn. 160, 111 N. W. (2d) 225.

In Brown v. St. Paul City Ry. Co. 241 Minn. 15, 62 N. W. (2d) 688, 44 A. L. R. (2d) 535, this court discussed the harshness of the rule which requires an attorney to subject himself to a finding of contempt and then appeal from the contempt order before a pretrial order can be reviewed, and we there suggested that possibly a better remedy would be to permit the use of a writ of prohibition so that the matter could be reviewed before irreparable harm had been done.

Rule 35.01, Rules of Civil Procedure, provides:

"In an action in which the mental or physical condition or the blood relationship of a party * * * is in controversy, the court in which the action is pending may order the party to submit to * * * a mental or physical or blood examination by a physician. The order may be made only on motion for good cause shown and upon notice to the party or

---

[1] See, Weidel v. Plummer, 243 Minn. 476, 68 N. W. (2d) 245; Craigmile v. Sorenson, 241 Minn. 222, 62 N. W. (2d) 846; Bellows v. Ericson, 233 Minn. 320, 46 N. W. (2d) 654; Nemo v. Local Joint Executive Board, 227 Minn. 263, 35 N. W. (2d) 337, 811; State ex rel. Flodin v. District Court, 222 Minn. 546, 25 N. W. (2d) 692; State ex rel. Roberts v. Hense, 135 Minn. 99, 160 N. W. 198; State ex rel. Hahn v. Young, 29 Minn. 474, 9 N. W. 737; Home Ins. Co. v. Flint, 13 Minn. 228 (244); 15 Dunnell, Dig. (3 ed.) §§ 7840, 7841.

person to be examined and to all other parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is made."

In Sibbach v. Wilson & Co. (7 Cir.) 108 F. (2d) 415, it was held under a similar Federal rule [2] that where the plaintiff in an action for injuries refused to submit to physical examination as required by a district court order, the district court's action in committing plaintiff to jail for contempt of court was not error. The Supreme Court reversed, holding that the rule exempted refusal to obey an order requiring a physical or mental examination from punishment as for contempt, but held that the provision permitting a district court to order a party to submit to such an examination when his physical or mental condition was in controversy was within the rule-making authority granted the Supreme Court by Congress. Sibbach v. Wilson & Co. 312 U. S. 1, 61 S. Ct. 422, 85 L. ed. 479.

In Ex parte Fahey, 332 U. S. 258, 259, 67 S. Ct. 1558, 1559, 91 L. ed. 2041, 2043, Mr. Justice Jackson, speaking for the court, said with respect to the use of extraordinary writs in an area similar to the one here involved:

"Mandamus, prohibition and injunction against judges are drastic and extraordinary remedies. We do not doubt power in a proper case to issue such writs. But they have the unfortunate consequence of making the judge a litigant, obliged to obtain personal counsel or to leave his defense to one of the litigants before him. These remedies should be resorted to only where appeal is a clearly inadequate remedy. We are unwilling to utilize them as substitutes for appeals. As extraordinary remedies, they are reserved for really extraordinary causes."

In Annotation, 51 A. L. R. 183, 184, relative to physical examination of a plaintiff, we find this expression:

"As stated in the former annotations, the rule in the majority of jurisdictions is that the trial court has the power to require the plaintiff,

---

[2] Rule 35, Rules of Civil Procedure for the District Courts of the United States.

in an action to recover for injuries, to submit to a physical examination in order that the extent of the injuries may be ascertained. However, the defendant does not have an absolute right to require the plaintiff to submit to the examination, the matter being within the discretion of the trial court. Although the trial court's ruling is subject to review on appeal, the courts have uniformly adopted the view that it will not be disturbed unless it palpably shows an abuse of discretion."

See, also, Annotation, 108 A. L. R. 142.

In Wanek v. City of Winona, 78 Minn. 98, 80 N. W. 851, 46 L. R. A. 448, the trial court denied an application for the appointment of some competent and disinterested physicians to perform a physical examination of the plaintiff in order to ascertain the nature and extent of his injuries. The case was tried and upon appeal error was alleged in the trial court's order denying the physical examination. Mr. Justice Mitchell made the following disposition of that issue, stating (78 Minn. 100, 80 N. W. 851):

"* * * Upon both principle and reason we are of opinion that in a civil action for physical injuries, where the plaintiff tenders an issue as to his physical condition, and appeals to the courts of justice for redress, it is within the power of the trial court, in the exercise of a sound discretion, in proper cases, upon an application reasonably made, under proper safeguards designed to preserve the rights of both parties, to order such an inspection, and to require the plaintiff to submit to it under the penalty of having his action dismissed in case he refuses to do so."

See, Wittenberg v. Onsgard, 78 Minn. 342, 81 N. W. 14, 47 L. R. A. 141; Aske v. Duluth & I. R. R. Co. 83 Minn. 197, 85 N. W. 1011; Rief v. G. N. Ry. Co. 126 Minn. 430, 148 N. W. 309; Mutual Life Ins. Co. v. Griesa (C. C. D. Kan.) 156 F. 398, 402.

In Union Pacific Ry. Co. v. Botsford, 141 U. S. 250, 11 S. Ct. 1000, 35 L. ed. 734, the court held that a physical examination of a party could not be called for on the ground that it was equal to assault without lawful authority. The force of that holding, however, is lessened by Camden & Suburban Ry. Co. v. Stetson, 177 U. S. 172, 20

S. Ct. 617, 44 L. ed. 721. The Botsford case has also been criticized in 8 Wigmore, Evidence (McNaughton Rev. 1961) § 2220. See, also, Van House v. Canadian Northern Ry. Co. 155 Minn. 57, 192 N. W. 493, 28 A. L. R. 357; Annotations, 135 A. L. R. 883, 164 A. L. R. 967, 982, and 25 A. L. R. (2d) 1407, 1415; 11 Minn. L. Rev. 665; 36 Minn. L. Rev. 640.

In some jurisdictions the court has not named a physician but simply ordered the examination to be made by a physician chosen by the moving party. Klein v. Yellow Cab Co. (N. D. Ohio) 7 F. R. D. 169. See, Nomina v. Eggeman, 26 Ohio O. (2d) 122, 188 N. E. (2d) 440; Adkins v. Eitel, 2 Ohio App. (2d) 46, 206 N. E. (2d) 573; Witte v. Fullerton (Okla.) 376 P. (2d) 244; Ellsworth v. Brown (Okla.) 387 P. (2d) 634.

In Carnine v. Tibbetts, 158 Ore. 21, 74 P. (2d) 974, the court held that the refusal of the trial court to grant defendant's motion to require plaintiff to submit to a physical examination amounted to such an abuse of discretion as to necessitate the reversal of the judgment. The mere statement by counsel for the plaintiff at the time the motion was made that plaintiff had theretofore been examined by some four doctors, and that all or most of them would be called as witnesses, did not justify a refusal of the motion.

Relators contend that Sharff v. Superior Court, 44 Cal. (2d) 508, 282 P. (2d) 896, 64 A. L. R. (2d) 494, and Krook v. Blomberg, 95 N. H. 170, 59 A. (2d) 482, are directly in point in support of their contentions. In the Krook case plaintiff claimed that the physician had a personal dislike for plaintiff's counsel. Notwithstanding that, the plaintiff was required to be examined by that physician. The New Hampshire court went on to say (95 N. H. 170, 59 A. [2d] 482):

"* * * The rationale of our practice has been well expressed in Taylor v. Thomas, 77 N. H. 410, 411: 'But as the law is now administered, there is no such thing as property in a piece of evidence. It is now universally recognized that the object of a trial is to ascertain the truth by rational means. The sporting theory—the theory that a judicial trial is a game to be played according to certain rules—has no

more place in the present conception of the administration of justice than has the wager of battle.' The use of depositions, discovery, physical examinations and pre-trial procedure * * * are customary examples of 'rational means' to discover some of the truth before trial. They enable court, counsel and the parties to have a more intelligent grasp of the issues to be litigated and the modern trend is to encourage such practices."

In Sharff v. Superior Court, *supra,* it appears that after a personal injury action was set for trial the defendants made a motion for an order requiring the plaintiff to submit to an examination by defendants' physician in the absence of her attorney. Plaintiff consented to the examination but requested that she be permitted to have her attorney present. The lower court made an order directing that she "submit to an oral and physical examination concerning [her] alleged injuries, which said examination shall be performed in the absence of said plaintiff's attorney * * * and that further proceedings by plaintiff in the above entitled action be stayed until said plaintiff * * * submits to said examination." 44 Cal. (2d) 509, 282 P. (2d) 897, 64 A. L. R. (2d) 496. Plaintiff instituted a proceeding in mandamus to compel the court to allow the case to go to trial without requiring plaintiff to submit to an examination under the conditions specified in the order. Two attorneys who represented plaintiff in her personal injury action joined with her in requesting relief, but the California court said that they had no standing on their own behalf to challenge the validity of the order and the proceeding was dismissed as to them.

The court further stated (44 Cal. [2d] 510, 282 P. [2d] 897, 64 A. L. R. [2d] 496):

"Mandamus will issue, where there is not a plain, speedy and adequate remedy in the ordinary course of law, to compel performance of an act which the law specifically enjoins or to compel the admission of a party to the use and enjoyment of a right to which he is entitled and from which he is unlawfully precluded. (Code Civ. Proc., §§ 1085, 1086.) The order in the present case is not appealable, and plaintiff does not have any plain, speedy and adequate remedy in the ordinary

course of law. The writ is, therefore, available to test whether the court by its order has imposed an unlawful condition upon plaintiff's right to proceed to trial.

\* \* \* \* \*

"We are of the view that the respondent court, in staying all proceedings until plaintiff should comply with the order directing her to submit to an oral and physical examination without the presence of her attorney, imposed an unwarranted condition on her right to have the case proceed to trial.

"Let a writ of mandate issue directing respondent court to allow the case to be tried without requiring plaintiff to submit to a medical examination in the absence of her attorney."

In Black v. Bisgier, 139 Misc. 100, 248 N. Y. S. 555, plaintiff brought an action in negligence for personal injuries. Defendant sought a physical examination of plaintiff by one Dr. John R. Gray under the Civil Practice Act, § 306. Plaintiff raised no objection to the private or professional standing, character, and reputation of Dr. Gray, but took the arbitrary position that he did not like Dr. Gray and that therefore the court should not appoint him. The court pointed to the fact that negligence cases were in a great majority upon the trial court calendar and that orders for physical examinations of plaintiffs by defendants in personal injury actions are stipulated or ordered in nearly every case. The court then said (139 Misc. 102, 248 N. Y. S. 557):

"\* \* \* While adhering strictly to the fundamental and unchanging rights of security of person and property, we must dictate our practice in the light of modern conditions.

"The court would not hesitate to appoint Dr. Gray at its own instance had no suggestion been made by counsel for either party. The very nature of his task forbids that he or his selection be in any manner subject to the arbitrary dictation of the plaintiff, his counsel or physician.

"The motion should be granted, both as a matter of law and also in

the exercise of that discretion which in motions of this character always remains with the court."

In a later New York case, Davis v. S. Klein on the Square, Inc. 35 Misc. (2d) 981, 231 N. Y. S. (2d) 460, the defendant served a notice for the physical examination of one of the plaintiffs pursuant to paragraph 1 of article II of the Revised Calendar Rules of the Second Department (Special Rule for the Courts in All Counties Within the Second Judicial Department, Requiring Physical Examinations and Exchange of Medical Information), and for the exchange of medical information, pursuant to paragraph 2 of the said article. Thereafter plaintiffs moved to vacate this notice so as to substitute an impartial medical specialist chosen by the court. The court granted the motion, its order providing inter alia (35 Misc. [2d] 982, 231 N. Y. S. [2d] 461):

"ORDERED, that in the event counsel are unable to agree upon a suitable date, defendant's counsel may fix a date and hour satisfactory to said physician * * *."

The injured plaintiff appeared for examination by the physician designated by the court, bringing with her a letter from her attorney which summarized the terms of the court's order. A copy of this letter, however, was never sent to the defendant's attorney. Subsequent to the examination defendant, without knowledge that the plaintiff had already been examined, obtained an order to show cause for leave to reargue plaintiffs' motion, and upon reargument, to deny it and reinstate the defendant's original notice. The court held that the rule involved contemplated that the party conducting a physical examination of another should have the right to designate the examining physician, whether the party to be examined or the examining party demands the examination. The court further said (35 Misc. [2d] 983, 231 N. Y. S. [2d] 462):

"While the rule provides that any party may move to modify or vacate the notice naming the examining physicians on the ground that the physician named is objectionable, that provision clearly implies that upon such a motion the objecting party should demonstrate some valid

objection to the physician designated in the notice. A party may not thwart the rule by an unreasonable objection or merely because, as here, the defendant has named the examining physician. It would seem, also, that even if the moving party had a valid objection to the other party's choice of physician, the court would give that other party an opportunity to name another physician."

In a conference held in chambers, counsel for the plaintiffs in the Davis case indicated that he would object to any physician named by the defendant, even if he were afforded an opportunity to choose from a list of as many as 15 or more physicians suggested by the defendant. The court said that in view of this attitude and the plain language of the rule, there was no reason to vacate or modify defendant's original notice and the plaintiffs' motion to do so was denied.

In the instant case it is clear from the record that plaintiffs objected to the motion for a physical examination by the physician chosen by relators solely on the basis of the particular choice of examiner, not to the fact of an examination per se. The basis of the objection was stated by plaintiffs' counsel to be what he felt was a personality conflict between his law firm and the physician chosen by relators. On these facts we are convinced that the trial court's denial of relators' motion was an abuse of its discretion. As we see it, a party may not thwart the rule under which the motion was made by an unreasonable objection to a physician chosen by his opponent. In this case the objection made merely because plaintiffs' counsel has a personal dislike of the medical examiner chosen by relators cannot be upheld as a valid one.

The order of the trial court dated February 9, 1967, is annulled. It is further ordered that the mental and physical examination of plaintiff Mrs. Wasmund proceed and be made by Dr. Leemhuis in the manner originally requested by relators. To that extent the writ is made absolute, subject, however, to the right of the parties to proceed to trial immediately after such examination.

Writ made absolute.