JANICE H. MENKENS, APPELLANT, V. JAMES T. FINLEY
AND ARRON W. FINLEY, APPELLEES.

555 N.W.2d 47

Filed November 8, 1996.   No. S-94-832.

Thomas J. Young, of Young & LaPuzza, for appellant.

David G. Hartmann, of Schneider & Hartmann, P.C., for appellees.

WHITE, C.J., CAPORALE, FAHRNBRUCH, WRIGHT, CONNOLLY, and GERRARD, JJ.

FAHRNBRUCH, J.

In this personal injury negligence appeal, plaintiff-appellant Janice H. Menkens, now known as Janice H. Lameo, claims the trial court erred when it permitted the medical witness for defendants-appellees James T. Finley and Arron W. Finley to testify by videotape deposition rather than requiring the witness to personally appear and testify before the jury.

Menkens also claims the trial court erred in overruling her objections to certain testimony of the Finleys' medical witness, Dr. Duane W. Krause.

We reverse the trial court's judgment and remand the cause to the district court for a new trial, except as to Ann L. Finley, who, by summary judgment, was dismissed as a defendant, and she is not involved in this appeal.

This appeal was originally filed in the Nebraska Court of Appeals. We transferred it to this court's docket pursuant to Neb. Rev. Stat. § 24-1106 (Reissue 1995), which permits us to regulate the appellate courts' dockets.

## ASSIGNMENTS OF ERROR

Restated, Menkens claims the trial court erred in (1) admitting into evidence the videotape deposition of Dr. Krause without a proper showing of his unavailability to appear personally in court and testify; (2) overruling Menkens' objections to foundation, form, and relevancy to certain testimony of Dr. Krause; and (3) overruling her motion for a new trial.

## STANDARD OF REVIEW

The determination of whether a witness is unavailable to appear at trial and give testimony is within the discretion of the trial court, whose ruling will be upheld on appeal in the absence of an abuse of that discretion. See, *State v. McHenry*, 250 Neb. 614, 550 N.W.2d 364 (1996); *Maresh v. State*, 241 Neb. 496, 489 N.W.2d 298 (1992); *Sikyta v. Arrow Stage Lines*, 238 Neb. 289, 470 N.W.2d 724 (1991).

The admissibility of evidence is reviewed for abuse of discretion where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court. *Reavis v. Slominski*, 250 Neb. 711, 551 N.W.2d 528 (1996); *Walpus v. Milwaukee Elec. Tool Corp.*, 248 Neb. 145, 532 N.W.2d 316 (1995); *Kroeger v. Ford Motor Co.*, 247 Neb. 323, 527 N.W.2d 178 (1995).

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld on appeal in the absence of an abuse of that discretion. *Farmers & Merchants Bank v. Grams,* 250 Neb. 191, 548 N.W.2d 764 (1996); *Hartley v. Guthmann*, 248 Neb. 131, 532 N.W.2d 331 (1995); *Wolfe v. Abraham*, 244 Neb. 337, 506 N.W.2d 692 (1993).

## FACTS

On November 11, 1988, Aaron Finley, the 16-year-old son of James and Ann Finley, while driving his family's automobile, rear-ended a motor vehicle operated by Menkens. Following the collision, Menkens declined ambulance service and drove herself to the emergency room of Dodge County Memorial Hospital in Fremont, Nebraska. There, Menkens was examined by an emergency room physician, and x rays were taken of her lumbar spine. The record reflects that after the accident, to and including the middle of March 1994, Menkens saw various doctors for back pain that she claimed was a result of the 1988 rear-end collision.

In early March 1994, Menkens was referred by her then treating physician to Dr. Krause, medical director of Memorial Hospital's radiology department. Dr. Krause performed a CAT, computerized axial tomography, scan of Menkens' lower lumbar spine and an MRI, magnetic resonance imaging, of her cervical spine. Dr. Krause also reviewed x rays of Menkens taken by his medical partner on November 11, 1988, the day of the rear-end collision, as well as his partner's report on those x rays.

After a pretrial hearing, the trial court sustained the Finleys' motion to take a videotape deposition of Dr. Krause and ruled that it could be used at trial in the absence of Dr. Krause. At a later hearing, the trial court overruled Menkens' form, foundation, and relevancy objections to certain testimony contained in Dr. Krause's deposition.

The Finleys admitted that the sole proximate cause of the accident was the negligence of Aaron Finley and that such negligence was imputed to Aaron's father, James Finley. Therefore, the only issue submitted to the jury was the extent and amount of damages. The jury awarded Menkens damages of $7,864.40. The trial court decreased the judgment to $5,931.50. The lower amount was a result of the court's charging Menkens with certain costs incurred by the Finleys after Menkens rejected the Finleys' offer to confess judgment in Menkens' favor for $10,000, all as provided in Neb. Rev. Stat. § 25-901 (Reissue 1995). Menkens' motion for a new trial was overruled by the trial court. This appeal followed.

## ANALYSIS

### AVAILABILITY OF DR. KRAUSE AS WITNESS

Menkens claims the trial court erred in admitting into evidence the videotape deposition of Dr. Krause without a proper showing of his unavailability.

This court has determined depositions are hearsay and, as such, are only admissible if they fit within a hearsay exception. *Maresh v. State*, 241 Neb. 496, 489 N.W.2d 298 (1992). The exception to the hearsay rule contained in Neb. Rev. Stat. § 27-804(2)(a) (Reissue 1995) does not exclude depositions taken in compliance with law if the declarant is unavailable as a witness. Unavailability includes situations outlined in § 27-804(1).

In permitting the taking and using of Dr. Krause's deposition, the trial court relied on Neb. Ct. R. of Discovery 32(a)(3)(E) (rev. 1996), which provides:

> (3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:
>
> . . . .
>
> (E) That such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used[.]

We have previously held that the Nebraska discovery rules do not provide an additional exception to the hearsay rule. *Maresh, supra*. We have also determined that the unavailability requirement of § 27-804 must be read into rule 32 so that the Nebraska discovery rules do not create an additional exception to the hearsay rule. *Maresh, supra* (stating that to be admissible, deposition must satisfy unavailability requirements of § 27-804(2)(a)). See *Sikyta v. Arrow Stage Lines*, 238 Neb. 289, 470 N.W.2d 724 (1991) (determining witness is unavailable authorizes use of witness' deposition pursuant to rule 32(a)(3)(E)). Consequently, the question before this court is whether Dr. Krause was unavailable, thus satisfying the hearsay exception and thereby allowing his deposition to be used in lieu of his live testimony.

This court has previously addressed the question of a doctor's unavailability as a witness. In *Sikyta, supra,* we reviewed a decision involving the unavailability of a doctor due to his surgery schedule. The attorneys in *Sikyta* met with the trial judge the morning of trial and discussed the use of a videotape deposition of the doctor. The deposition was taken that same evening at the doctor's office. When the deposition was introduced at trial, opposing counsel objected, stating it had not been shown that the doctor was unavailable. The trial court determined that because the doctor was in surgery, he was unavailable to testify and his unavailability constituted an "exceptional circumstance" under rule 32(a)(3)(E). On appeal, opposing counsel argued there was an insufficient showing that the doctor was unavailable. This court noted that determination that a witness is unavailable authorizes the use of the witness' deposition pursuant to rule 32(a)(3)(E). *Sikyta, supra.* However, the specific question of whether the doctor was unavailable under those circumstances was not addressed.

There are few decisions from other jurisdictions dealing with the unavailability of doctors to personally give testimony at trial. The trial court in *Rubel v. Eli Lilly and Co,* 160 F.R.D. 28 (S.D.N.Y. 1995), determined a doctor was unavailable to testify because he was in a practice with three other doctors who were all gone, leaving him to manage the entire practice alone. Within the 2 weeks before the trial, one colleague retired for physical reasons, one left for maternity leave, and one was hospitalized for an undiagnosed illness. The court found these facts created specific and unusual circumstances that rendered the doctor unavailable. However, the court did not find the doctor too busy to make any time available for the case and granted the parties leave to take his depositions after business hours at his office.

In *Reber v. General Motors Corp.,* 669 F. Supp. 717 (E.D. Pa. 1987), the trial court allowed a doctor's deposition to be admitted in evidence, after the doctor claimed his heavy surgical schedule prohibited him from attending the trial. However, the deposition was permitted principally because it had been taken with both sides expecting its use at trial.

In *Angelo v. Armstrong World Industries, Inc.*, 11 F.3d 957 (10th Cir. 1993), the court did not permit a physician's deposition to be admitted in evidence. The physician stated he was unable to appear in court because he was "'extremely busy'" during the time scheduled for his testimony. *Id.* at 963. His office was close to the courthouse, and the court offered to accommodate his schedule. Counsel could not persuade the doctor to testify and did not subpoena him. The court found that counsel's inability to get the doctor to testify did not justify the deposition being received into evidence.

In this case, Dr. Krause was not in surgery when his testimony was required. The record reflects no specific and unusual circumstances that show Dr. Krause was unavailable. The parties here did not agree to use the deposition at trial, and Dr. Krause was within the subpoena power of the court.

Trial courts may be guided in their determination of whether a witness is unavailable by examples set forth in *Maresh v. State*, 241 Neb. 496, 489 N.W.2d 298 (1992). A witness may be unavailable when the facts show

> the witness' attendance is obtainable only through financial hardship on the proponent, that the expense to produce the witness may be prohibitive, that hostility or animosity on the part of the witness may prevent attendance at trial, or that other circumstances may demonstrate that the proponent lacks "reasonable means" to produce or compel the witness' attendance at trial.

*Id.* at 507, 489 N.W.2d at 308.

Upon examination of all the aforementioned factors, we conclude from the record that Dr. Krause was not unavailable to testify. The Finleys made no showing that they lacked reasonable means to produce Dr. Krause's attendance at trial. The fact that it was "really difficult" for Dr. Krause to testify because he was required to be at the hospital for emergencies is not persuasive. In a letter to the Finleys' attorney, Dr. Krause stated that while his partner was gone, he was "committed to providing continuous 7:30 AM - 5:30 PM Monday through Friday coverage at the radiology department at Memorial Hospital" and that "except for occasionally over a noon hour, we have a commitment to the Hospital and its medical staff to always have

a radiologist available during working hours and on-call 24 hours a day, 7 days a week." (Emphasis supplied.)

Dr. Krause could have testified prior to his shift, during the noon hour, or after the completion of his shift. While testifying early in the morning, over the noon hour, or at 5:30 p.m. may be an inconvenience, it does not render a witness unavailable. Dr. Krause was not unique in that he had a job which he could not leave during the workday. An inconvenience does not justify the use of a deposition over live testimony.

The importance of live testimony has long been recognized by the courts and commentators. See, *Sikyta v. Arrow Stage Lines*, 238 Neb. 289, 470 N.W.2d 724 (1991); 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 800[01] (1992). The unavailability requirement itself is a result of a strong policy favoring live testimony. *Maresh v. State, supra*; 2 McCormick on Evidence § 31 at 301 (John W. Strong 4th ed. 1992).

Dr. Krause's being on call at the hospital does not establish unavailability. That he *might* have had to leave the proceedings if an emergency arose also does not constitute unavailability. Had Dr. Krause testified at the trial and an emergency arose, he certainly could have been excused and could have returned to the hospital. The mere threat of an emergency or something unexpected or unforeseeable, such as a sudden summons to the hospital, does not automatically render a doctor unavailable to testify in court. Use of rule 32(a)(3)(E) requires a showing that the witness is unavailable in order to use the witness' deposition in court. We conclude from the record that the trial court abused its discretion in finding Dr. Krause was unavailable and in admitting his deposition.

### RULE 32(a)(3)(F)

The Finleys argue that Dr. Krause's deposition should have been admitted pursuant to rule 32(a)(3)(F), which states:

> (3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:
>
> . . . . .
>
> (F) Upon application and notice prior to the taking of the deposition, that circumstances exist such as to make it

desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.

We have clearly stated that unavailability must be read into rule 32 so as to avoid a judicially created exception to the hearsay rule. See *Maresh v. State*, 241 Neb. 496, 489 N.W.2d 298 (1992). Therefore, it follows that unavailability must be read into the requirements of rule 32(a)(3)(F).

Comments to the rule make clear that rule 32(a)(3)(F) authorizes the court to make "use of the deposition in the absence of exceptional circumstances if the application is made before the deposition is taken." Therefore, while rule 32(a)(3)(F) does not require "exceptional circumstances" to be present before a deposition is admitted, it still requires a showing of the witness' unavailability. The record reflects that the Finleys' counsel (1) made application and (2) gave notice prior to the taking of the deposition, both of which are requirements under the rule. However, advance application and notice do not negate the unavailability requirement. Because we find that Dr. Krause was not unavailable, we hold admission of his deposition was an abuse of discretion.

## Neb. Rev. Stat. § 27-803(22) (Reissue 1995)

The Finleys urge that Dr. Krause's deposition is admissible under § 27-803(22), the residual hearsay exception. This issue was not presented in the trial court. An issue not presented to the trial court may not be raised on appeal. *Farm Credit Bank v. Stute*, 248 Neb. 573, 537 N.W.2d 496 (1995). Therefore, we decline to address it.

## PLAINTIFF'S OBJECTIONS TO DR. KRAUSE'S TESTIMONY

Menkens also assigns as error the trial court's overruling of her foundation, form, and relevancy objections to certain testimony of Dr. Krause. The admissibility of evidence is reviewed for abuse of discretion where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court. *Reavis v. Slominski*, 250 Neb. 711, 551 N.W.2d 528 (1996); *Walpus v. Milwaukee Elec. Tool Corp.*, 248 Neb. 145, 532 N.W.2d 316 (1995).

During his deposition, on direct examination by the Finleys' lawyer, Dr. Krause stated there was nothing in the November 11, 1988, x rays that he could relate to an accident. He further stated there was nothing in these x rays that he could attribute to trauma, which he described as an injury resulting from an accident.

In answer to a question on cross-examination, Dr. Krause asked, "Was this patient [Menkens] injured in that [November 11, 1988,] car accident?" He replied to his own question, "I can't offer an opinion." Thereafter, Menkens' lawyer asked the following questions, and Dr. Krause gave the following answers:

Q. You can't offer an opinion because you don't have the underlying clinical history; is that correct?

A. That's correct. I have never examined the patient. I don't have the clinical history in detail. I have never examined the patient.

Q. So, in order to proffer an opinion with regard to whether or not she sustained any injury, by reason of the trauma of the accident, you would have had to have a physical examination and obtain clinical history from this patient; is that correct?

A. Someone would have to.

Q. Someone would. But you have not; is that correct?

A. No, I have not. I have not.

Later, Dr. Krause testified, "I cannot offer an opinion as to whether or not any pain this patient [Menkens] has is or is not related to that [1988] car accident."

Expert testimony should not be received into evidence if it is evident that the witness does not possess such facts that enable him to express a reasonable, accurate conclusion as distinguished from a mere guess. Without an adequate basis of facts, the witness should not be allowed to give an opinion. *Hoegerl v. Burt*, 215 Neb. 752, 340 N.W.2d 428 (1983); *Clearwater Corp. v. City of Lincoln,* 202 Neb. 796, 277 N.W.2d 236 (1979).

Dr. Krause testified that there was nothing in the x rays or CAT scan that he could relate to any trauma of the November 11, 1988, accident. Menkens objected to this testimony, claiming that it lacked foundation and was irrelevant. We agree with

Menkens that any opinion by Dr. Krause as to whether or not Menkens' condition was caused by the collision was without foundation and lacked relevance.

Dr. Krause testified that everything he saw on Menkens' x rays, CAT scan, and MRI exams he could have seen in a person who had never been in a car accident. He testified that to give an opinion in Menkens' case, a clinical history and a physical exam were required. Dr. Krause testified he had neither obtained a clinical history of Menkens nor had he physically examined her.

Dr. Krause's own statements reveal he was not in possession of the facts necessary to testify to the effect the collision had on Menkens. Where an expert's opinion testimony does not have a sound and reasonable basis, it should be stricken. *Wentling v. Jenny*, 206 Neb. 335, 293 N.W.2d 76 (1980); *Clearwater Corp., supra*. Dr. Krause's opinion had no adequate, sound, or reasonable basis; therefore, it lacked foundation, and its admission was an abuse of discretion on the part of the trial court.

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Neb. Rev. Stat. § 27-401 (Reissue 1995). Evidence is probative if it tends in any degree to alter the probability of a material fact. *State v. Oliva*, 228 Neb. 185, 422 N.W.2d 53 (1988). Dr. Krause's opinion had no adequate, sound, or reasonable basis and was, therefore, unreliable. An unreliable opinion does not tend to alter the probability of a material fact and, hence, is irrelevant.

Additionally, Dr. Krause's testimony lacked certainty. Dr. Krause testified he could not offer an opinion regarding whether Menkens was injured in the November collision. Lack of certainty in an expert's opinion is a problem of relevance. See, *McWhirt v. Heavey*, 250 Neb. 536, 550 N.W.2d 327 (1996); *Paulsen v. State,* 249 Neb. 112, 541 N.W.2d 636 (1996).

It is clear from Dr. Krause's testimony that his opinion regarding the effect of the November 11, 1988, collision on Menkens was without foundation and relevance.

## CONCLUSION

We conclude that the trial court abused its discretion by admitting into evidence Dr. Krause's deposition testimony. We vacate the jury's verdict, reverse the judgment of the trial court, and remand the cause to the district court for a new trial. Because we find that a new trial is necessary, we need not reach Menkens' remaining assigned error.

REVERSED AND REMANDED FOR A NEW TRIAL.

LANPHIER, J., participating on briefs.